Docket No. 95285–Agenda 1–March 2004.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. AVELL A. WALKER, Appellee.

Opinion filed June 4, 2004.

CHIEF JUSTICE McMORROW delivered the opinion of the court:

At issue in this appeal is whether the trial court abused its discretion by allowing the prosecution to present evidence of the name and nature of defendant’s prior conviction after defendant offered to stipulate to his felon status, an element of the crime for which he was tried. The appellate court 
reversed defendant’s conviction and remanded for a new trial (335 Ill. App. 3d 102), relying on the reasoning of the United States Supreme Court in 
Old Chief v. United States
, 519 U.S. 172, 136 L. Ed. 2d 574, 117 S. Ct. 644 (1997). In
 Old Chief
, the Court held that a trial court abuses its discretion if it spurns a defendant’s offer to stipulate and, instead, “admits the full record of a prior judgment, when the name or nature of the prior offense raises the risk of a verdict tainted by improper considerations, and when the purpose of the evidence is solely to prove the element of prior conviction.” 
Old Chief
, 519 U.S. at 174, 136 L. Ed. 2d at 584, 117 S. Ct. at 647.

For the reasons that follow, we affirm the appellate court’s ruling and hold that, in the case at bar, the trial court committed reversible error when it admitted evidence of the name and nature of defendant’s prior felony conviction rather than accept defendant’s offer to stipulate to his felon status.

BACKGROUND

Defendant, Avell A. Walker, was tried in the circuit court of Du Page County on charges of unlawful possession of a weapon by a felon (720 ILCS 5/24–1.1 (West 2000)) and unlawful sale of firearms (720 ILCS 5/24–3(a) (West 2000)). Prior to trial, defense counsel made an oral motion to stipulate that defendant had a prior felony conviction. The following colloquy took place:

“[Defense Counsel]: This is why–I don’t have this third motion in limine written out. I can make it orally. The State will introduce evidence of prior conviction for possession of a controlled substance which is again going to lead to the jury considering the defendant a drug dealer, that’s why I didn’t want it mentioned, that’s why I mentioned in Paragraph B. There is–one of the charges here is possession of weapon by a felon which I understand the State will proceed on.

I will either ask that the fact that Mr. Walker has a prior felony, I am willing to stipulate to it, I am willing to stipulate any amended indictment would be sufficient for knowledge for trial today, I am not alleging any surprise. But I don’t think–the fact that he needs to be called a felon is necessary. I think by stipulating to it, that’s sufficient and is–otherwise, I have a motion 
in
 
limine
 to exclude it.

Court: To exclude what?

[Defense Counsel]: The fact of the prior conviction.”

The State rejected the offer to stipulate on the ground that defendant’s felon status was an element of the charged offense. The court reserved ruling on defendant’s motion.

Jury selection began the next day and continued on into the following day. When jury selection was completed, the State began presentation of its case against defendant. Although defendant was not charged with possession or sale of a controlled substance, the prosecutor began his opening statement by saying, “This case is about a drug deal gone bad.” The prosecutor told the jury that the evidence would show that on September 15, 2000, defendant delivered crack cocaine to a man, failed to receive payment, and then returned with a gun to extract payment from the man. The State then called its two key witnesses, Aprylle and Crystal Watson, who had been granted immunity by the State for their testimony.

The testimony of Aprylle and Crystal Watson is set forth in detail in the appellate court decision below. See 335 Ill. App. 3d at 104-07. In sum, their testimony established that 16-year-old Aprylle and her 17-year-old sister, Crystal, were with defendant on the evening of September 15, 2000. During the course of the evening, both sisters became aware that defendant was in possession of crack cocaine. At one point in the evening, defendant instructed Aprylle to drive him to Woodridge, where he met with a man at an apartment building at 7715 Woodridge Drive. After defendant met with the man, they waited outside the building for several minutes, but the man never returned. Eventually, defendant told Aprylle to drive him to his apartment in Bolingbrook. Aprylle and Crystal waited while defendant went inside. When he came out, they said, he was wearing gloves and holding his waist in a way that indicated that he had a gun.

They returned to Woodridge. Aprylle, at her sister’s direction, went into the apartment building with defendant. Aprylle testified that, while she was inside the building, defendant placed something heavy in her inside jacket pocket and told her to go back to the car. When she opened the front door of the apartment building, she saw several police officers. The officers told her to get down on the ground. Aprylle was arrested and a gun was recovered from her jacket pocket. Crystal and defendant were arrested shortly thereafter.

Both Crystal and Aprylle testified that they initially lied to the police because they were scared. Aprylle testified that she initially told the police that the gun was hers. Crystal also gave police an untrue written statement. Later, however, when the police told them that their stories “didn’t match,” they told “the truth.” Aprylle and Crystal said that they then gave police written statements in which they gave the “true version” of events, consistent with their trial testimony.

On cross-examination, defendant was able to establish certain discrepancies and inaccuracies among the statements Aprylle and Crystal had given to police and their trial testimony. It was also established that Aprylle and Crystal, although not related to defendant, visited defendant in jail three times since his arrest and, each time, signed in as defendant’s cousins. Aprylle testified that they lied because they thought they had to be related to defendant to visit him in jail. Also, Crystal revealed on cross-examination that she recognized cocaine when she saw it because “she knew people who have used it before.” Crystal also admitted that she had been around guns before that night and, in fact, had once been shot.

The State then presented the testimony of Woodridge police officers William Hoogland and Tom Stefanson. Both officers testified that on September 15, 2000, they went to the 7700 block of Woodward Avenue in response to a radio dispatch. Officer Stefanson testified that he recovered a gun from Aprylle’s inside coat pocket and Officer Hoogland testified that he inventoried the gun recovered by Officer Stefanson. Officer Hoogland identified State’s Exhibit No. 1 as the gun he inventoried.

On cross-examination, Officer Hoogland admitted that during his investigation he never found any drugs or gloves on defendant or at the scene. Officer Hoogland also admitted that on September 16, 2000, after Crystal and Aprylle were questioned, they were released to their parents without being charged with an offense.

After the witnesses were heard, it was stipulated that John Collins, an expert in the field of ballistics, if called, would testify that he examined and test fired State’s Exhibit No. 1 and found it to be a working firearm that functioned as designed. The State also placed in evidence, over defendant’s renewed objection, State’s Exhibit No. 6, a certified copy of conviction showing that defendant had been convicted on December 2, 1999, for the felony offense of unlawful possession of a controlled substance with intent to deliver.

Before resting, the State moved to have its exhibits, including the copy of Crystal Watson’s second written statement to the police, admitted into evidence. Arguing in favor of the admission of Crystal’s prior consistent written statement to police, the State said:

“[T]here’s a clearly delineated exception [to the hearsay rule] where on cross-examination counsel suggests that there’s a recent motive to fabricate that you can in that context, to counter that inference, admit as substantive evidence a prior consistent statement, and I think that that’s exactly what we’re trying to do and its proper for that reason.”

Over defendant’s objection, Crystal’s written statement was admitted without reservation or limitation.

The defendant called only one witness, Leroy Keith, a supervisor in the criminal ballistics section of the Du Page County Sheriff’s Crime Laboratory, who testified that he checked State’s Exhibit No. 1 for latent fingerprints and none were found. Defendant then moved to have defense Exhibit No. 3, Crystal’s
 first
 written statement to police, admitted as a prior inconsistent statement. After some discussion, the court granted the motion.

In closing argument, the State began by defining the charges against defendant. The prosecutor told the jury:

“Now the second charge, a person commits the offense of unlawful possession of a weapon by a felon when he,
 having been previously convicted of the offense of possession of a controlled substance with intent to deliver
, knowingly possesses a firearm on or about his person.” (Emphasis added.)

The prosecutor elaborated further, telling the jury that one of the propositions that had to be proven by the State was that “defendant had previously been convicted of the offense of unlawful possession of a controlled substance with intent to deliver.” Later, repeating the name of the prior offense, the prosecutor told the jury that “People’s Exhibit No. 6 is a *** self-authenticating document,” meaning that it is the “type of document that doesn’t need anything but the seal of the Circuit Court Clerk on it to show the truthfulness of the document. You know the Defendant was convicted of that offense on December 2nd of 1999, before this occurred.”

In defense counsel’s closing argument, the credibility of the two Watson girls was attacked. Various inconsistencies and inaccuracies were pointed out and it was hinted that the girls were covering for each other and could not be trusted. In rebuttal, the State agreed that there were inconsistencies, but argued that any inconsistencies went only to inconsequential matters. The prosecutor then stated:

“The author of this play is this man. It’s this Defendant. He picked the theme. Sell drugs for money. If you don’t get money, go back and get it. Bring a gun.”

Finally, the prosecutor asked the jury to find defendant guilty of “possessing a weapon by a felon in his prior conviction of unlawful delivery of a controlled substance.”

After receiving instructions, the jury retired to deliberate. After a while, the jury sent the following request to the court:

“We’d like to review the statements of the sisters, both witness Crystal’s and Aprylle’s.”

The court discussed with counsel how to respond to the jury’s message, noting that Aprylle’s written statement had never been admitted. The court, however, expressed a willingness to send back Crystal’s two statements. Defense counsel objected to sending back any of the statements, but the prosecutor argued that the two written statements should be sent back, saying:

“Both are admissible as substantive evidence. And with respect to the hearsay exception for rebutting the inference of fabrication, I think they’re [the jury] entitled to consider it, especially in light of their request to see them.”

After some additional discussion, the court sent Crystal’s two written statements back to the jury with a note that said:

“The written statement of Aprylle was not admitted. You may, however, consider the testimony regarding that statement. Both written statements of Crystal’s were offered as exhibits, and those are being provided to you as requested.”

Later, the jury sent the following question to the court:

“When possession is concerned, does that entitle [
sic
] that the gun was in the car, and he knew about it, or does that mean that he had to have physical contact with it? And if so, does physical contact mean that he just has to touch it to be in or about his person, or does he have to hold and control the weapon?”

Over defendant’s objection, the court responded by giving the jury a copy of Illinois Pattern Jury Instruction, Criminal, No. 4.16, which contains definitions for constructive possession and joint possession.

After receiving the additional instruction on possession, the jury sent the court a note posing the following question:

“For the definition of give, does the person who has possession have to physically hand or place the object on another, or does give mean that the person who has possession did not necessarily have to physically place or hand the object over, just know the object has changed hands, and the end result is that the object is in the possession of another person? Does making an object available to a minor mean the same thing as giving an object to a minor?”

At the prosecutor’s urging, the court responded to this question by saying, “The word give should be afforded its common and ordinary meaning.”

The jury then sent the court this question:

“Is giving directly the same as giving indirectly? If you have knowledge of something previously in your possession ending up in someone’s hands, did you give it to the person?”

To this question, the court responded: “You must decide the case based on the evidence you received and the instructions you’ve been given.”

After some more time had passed, the court called the parties back into court and said:

“Here’s the situation. The trial itself lasted about three-and-a -half hours. And at this point, they’ve been out about six hours. They haven’t sent out a note indicating they’re deadlocked. But in light of the hour and in light of the fact that I have bond court to go to, I’m going to send them home. And I’m going to bring them back next week.”

The jury was called into court. Because Monday was a legal holiday, the jury was told to return on Tuesday. On Tuesday, February 21, 2001, the jury returned and continued to deliberate. At about 11 a.m. the jury returned a verdict of guilty on both charges.

 In a posttrial motion, defendant, relying on the United States Supreme Court decision in 
Old Chief 
and the appellate decision in 
People v. Peete
, 318 Ill. App. 3d 961 (2001), 
argued that he had been unfairly prejudiced by the introduction of evidence of the name and nature of his prior felony conviction and should be granted a new trial.

The trial court denied the motion, stating:

“[W]ith respect to that prior conviction, it is an element of the offense, and although there are ways to skirt around what that conviction was for, I am not aware of any case that provides that you can keep from the jury, the fact that he is a convicted felon because that is an element of the offense. *** [T]he argument that was made was that there would be a stipulation so that it wouldn’t be presented to the jury that the defendant was a convicted felon.”

Defendant was then sentenced to 42 months’ imprisonment and he appealed.

On appeal, the State argued that defendant had not properly preserved the issue of whether the name and nature of his prior felony conviction should have been excluded because, at trial, defendant asked to bar evidence that he was a felon. The appellate court agreed that defendant’s argument at trial was imprecise, but held that “assuming that a waiver occurred,” review of the issue could be had under the plain error rule. 335 Ill. App. 3d at 110. The appellate court, adopting the reasoning in 
Old Chief,
 concluded that the trial court abused its discretion when it allowed the State to introduce evidence of the name and nature of defendant’s prior felony conviction when defendant had made an offer to stipulate. 335 Ill. App. 3d at 112. The appellate court also found that the error could not be deemed harmless because the evidence, “though it ‘suffices to permit retrial without offending double jeopardy,’ ” was not overwhelming. 335 Ill. App. 3d at 113, quoting 
Peete
, 318 Ill. App. 3d at 972.

The State filed with this court a petition for leave to appeal (see 177 Ill. 2d R. 315(a)), arguing that the appellate court erred when it held that the admission of evidence of the name and nature of defendant’s prior conviction was reversible error. The State also challenges the appellate court’s ruling that the trial court had improperly admitted Crystal Watson’s second written statement as substantive evidence. We allowed the State’s petition.

The defendant filed a cross-appeal (see 155 Ill. 2d R. 318(a); 134 Ill. 2d R. 612(b)), wherein the defendant argues that his constitutional rights were violated when, in response to inquiries made by the jury during deliberations, the court provided the jury with an instruction which defined constructive possession, when the State’s theory at trial had always been based on actual possession.

ANALYSIS

The primary issue in the case at bar is whether the trial court abused its discretion by allowing the prosecution to present evidence of the name and nature of defendant’s prior conviction when a stipulation was available. See 
People v. Boclair
, 129 Ill. 2d 458, 476 (1989) (a trial court’s admission of evidence is reviewed for an abuse of discretion). As noted earlier, the appellate court, relying on the Supreme Court decision in 
Old Chief v. United States
, 519 U.S. 172, 174, 136 L. Ed. 2d 574, 584, 117 S. Ct. 644, 647 (1997), and the Illinois appellate court decision in 
People v. Peete
, 318 Ill. App. 3d 961 (2001), found an abuse of discretion, reversed defendant’s convictions, and remanded for a new trial. The State urges us to reverse the appellate court’s endorsement of 
Old Chief
 and, accordingly, its ruling that defendant is entitled to a new trial.

As a threshold matter we address the State’s initial assertion that the claim of error concerning the admission of the name and nature of defendant’s prior conviction was not properly preserved and, as a result, not subject to appellate review. The State argues that defendant waived review of this issue because, at trial, he did not offer to stipulate to his felon status, 
but rather, sought to remove from the jury’s consideration the fact that he had a prior felony conviction. The State contends that it was not until defendant’s posttrial motion that he argued that he would be unfairly prejudiced if a stipulation was not substituted for evidence of the name and nature of his prior conviction. For this reason, the State argues, the appellate court should have found the issue waived and not reached its substantive merits. In addition, the State, while maintaining that admission of the name and nature of defendant’s prior felony conviction was not error at all, challenges the appellate court’s holding that the error was “plain” and, therefore, subject to review. The State argues that the evidence of defendant’s guilt was overwhelming and that there was no substantial risk that admission of the prior-conviction evidence denied defendant a fair trial.

We have reviewed the record and find, as did the appellate court below, that defense counsel’s argument at trial was inartful and imprecise. Counsel’s statements could reasonably be interpreted as an attempt to exclude the fact of defendant’s prior conviction from the jury’s consideration, a proposition clearly not supportable by 
Old Chief, 
nor any other case of which we are aware. Nonetheless, it is also clear from the record that defense counsel offered to admit to the fact that defendant had a prior felony conviction because he was concerned about the prejudice that might inure to defendant should the jury learn the name and nature of defendant’s prior conviction. Thus, we believe that defendant sufficiently called into question the propriety of admitting evidence of the name and nature of his prior conviction 
so that review of this claim need not be precluded.

Having decided that defendant did not waive the issue, we now review the appellate court’s holding that defendant was unfairly prejudiced by the admission of evidence of the name and nature of his prior felony conviction when a stipulation was offered. Because the appellate court relied on the decision in 
Old Chief
 in reaching this conclusion, a careful examination of that case is appropriate.

A. 
Old Chief v. United States

In 
Old Chief
, the defendant was charged with possession of a firearm by a felon in violation of 18 U.S.C. §922(g)(1); assault with a dangerous weapon; and using a firearm in relation to a crime of violence. Before trial, defendant offered to stipulate to the prior-conviction element of §922(g)(1) to prevent the State from presenting evidence that he was previously convicted of assault causing serious bodily injury. He argued that his offer to stipulate rendered the name and nature of the prior conviction inadmissible under Federal Rule of Evidence 403, which allows a court to exclude relevant evidence when its probative value is substantially outweighed by its unfair prejudice. The assistant United States attorney rejected the defendant’s offer to stipulate and the district court, over defendant’s objection, allowed the government to introduce the order of judgment and commitment for defendant’s prior conviction. On appeal to the Ninth Circuit, the court rejected the claim of error, holding (in an unpublished opinion) that “ ‘the government is entitled to prove a prior felony offense through introduction of probative evidence.’ ” 
Old Chief
, 519 U.S. at 177, 136 L. Ed. 2d at 586, 117 S. Ct. at 649.

The Supreme Court granted 
certiorari 
“because the Courts of Appeals have divided sharply in their treatment of defendants’ efforts to exclude evidence of the names and natures of prior offenses in cases like this.” 
Old Chief
, 519 U.S. at 177, 136 L. Ed. 2d at 586, 117 S. Ct. at 649. In a 5-4 decision, the Court held 
that, when the prosecution must prove felony-convict status as an element of a crime charged, “there is no cognizable difference between the evidentiary significance of an admission and of the legitimately probative component of the official record the prosecution would prefer to place into evidence.” 
Old Chief
, 519 U.S. at 191, 136 L. Ed. 2d at 594, 117 S. Ct. at 655. The Court then concluded:

“For purposes of the Rule 403 weighing of the probative against the prejudicial, the functions of the competing evidence are distinguishable only by the risk inherent in the one and wholly absent from the other. In this case, as in any other in which the prior conviction is for an offense likely to support conviction on some improper ground, the only reasonable conclusion was that the risk of unfair prejudice did substantially outweigh the discounted probative value of the record of conviction, and it was an abuse of discretion to admit the record when an admission was available.” 
Old Chief
, 519 U.S. at 191, 136 L. Ed. 2d at 594-95, 117 S. Ct. at 655.

In reaching this determination, the Court initally acknowledged that the name and nature of a defendant’s prior offense, as contained in the record of conviction, constitutes “relevant” evidence. 
Old Chief
, 519 U.S. at 179, 136 L. Ed. 2d at 587, 117 S. Ct. at 649. The issue, then, was not whether this evidence was rendered “irrelevant” by defendant’s offer to stipulate, but rather, whether under Federal Rule of Evidence 403 a trial court should exercise its discretion to exclude this concededly relevant evidence because its probative value is substantially outweighed by the danger of unfair prejudice. 
Old Chief
, 519 U.S. at 180, 136 L. Ed. 2d at 587, 117 S. Ct. at 650.

When conducting this Rule 403 balancing, the Court noted that evidence of a defendant’s prior criminal conduct always carries an inherent risk of being translated by the fact finder into a generalized notion that the defendant is of bad character and, thus, more likely to have committed the offense currently being charged. 
Old Chief
, 519 U.S. at 180-81, 136 L. Ed. 2d at 588, 117 S. Ct. at 650. Accordingly, admitting evidence of a defendant’s prior convictions will generally present a danger of unfair prejudice because this evidence has the capacity to “lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged.” 
Old Chief
, 519 U.S. at 180, 136 L. Ed. 2d at 588, 117 S. Ct. at 650. The Court concluded that “there can be no question that evidence of the name and nature of the prior offense generally carries a risk of unfair prejudice.” 
Old Chief
, 519 U.S. at 185, 136 L. Ed. 2d at 591, 117 S. Ct. at 652. Though the degree of risk would vary from case to case, the risk of unfair prejudice would be substantial where the prior conviction is for a gun crime or a crime similar to other charges in the pending case. 
Old Chief
, 519 U.S. at 185, 136 L. Ed. 2d at 591, 117 S. Ct. at 652. Therefore, the Court acknowledged that Old Chief, who was charged with possession of a firearm by a felon, assault with a dangerous weapon, and using a firearm in relation to a crime of violence, was correct to worry about the admission of evidence that he had a prior conviction for assault causing serious bodily injury. 
Old Chief
, 519 U.S. at 185, 136 L. Ed. 2d at 591, 117 S. Ct. at 652.

Finding that the admission of prior-conviction evidence presented a danger of unfair prejudice did not end the Court’s inquiry, however. This danger of unfair prejudice had to be weighed against the probative value of the evidence. Turning to the advisory committee notes to Rule 403, the Court reasoned that “when a court considers ‘whether to exclude on grounds of unfair prejudice,’ the ‘availability of other means of proof may ... be an appropriate factor.’ ” 
Old Chief
, 519 U.S. at 184, 136 L. Ed. 2d at 590, 117 S. Ct. at 652, quoting Fed. R. Evid. 403, advisory committee’s note (reprinted in 28 U.S.C. app). Thus, the Court opined, when deciding probative value, a trial court should “evaluate the degrees of probative value and unfair prejudice not only for the item in question but for any actually available substitutes as well.” 
Old Chief
, 519 U.S. at 182, 136 L. Ed. 2d at 589, 117 S. Ct. at 651.

Applying the above reasoning to the §922(g)(1) charge and the government’s concomitant duty to prove the prior-conviction element, in light of the fact that Old Chief offered to stipulate to his felon status, the Court analyzed the probative value of such a stipulation against the “concededly relevant” evidence of the record of conviction. The Court found that, in the context of a §922(g)(1) case, a stipulation as to felon status was not merely relevant evidence, but conclusive evidence of the prior-conviction element. Further, because the statutory language demonstrated “no congressional concern with the specific name or nature of the prior offense,” that evidence (the record of conviction), though technically relevant, “addressed no detail in the definition of the prior-conviction element that would not have been covered by the stipulation or admission.” 
Old Chief
, 519 U.S. at 186, 136 L. Ed. 2d at 591, 117 S. Ct. at 653. In other words, the Court found that when felon status is all that the government needs to prove, evidence of the name and nature of the prior conviction is needless surplusage which has no probative value, yet presents a high risk of unfair prejudice. Thus, the Court found it logical to conclude that the name and nature evidence should generally be excluded in favor of the admission or stipulation. 
Old Chief
, 519 U.S. at 186, 136 L. Ed. 2d at 591, 117 S. Ct. at 653.

The Court hastened to note that its reasoning was only applicable in those limited situations where proving felon status was the only evidentiary purpose for admitting prior-conviction evidence. The Court reaffirmed that, as a general matter, it was “unquestionably true” that “the prosecution is entitled to prove its case by evidence of its own choice, or, more exactly, that a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the Government chooses to present it.” 
Old Chief
, 519 U.S. at 186-87, 136 L. Ed. 2d at 591-92, 117 S. Ct. at 653, citing 
Parr v. United States
, 255 F.2d 86 (5th Cir. 1958). The Court assured that, under ordinary circumstances, a defendant’s offer to stipulate would not prevent the prosecution, which bears the burden of persuasion, from presenting its case in a manner that provides “evidentiary depth.” Nor could an admission deprive the prosecution of its right to present evidence with multiple utility. Thus, if there was any other purpose for admitting evidence of the name and nature of a prior conviction, the prosecution must be allowed to present it.

Although four members of the Court disagreed with this “manufactured rule” for §922(g)(1) cases (see 
Old Chief
, 519 U.S. at 201, 136 L. Ed. 2d at 601, 117 S. Ct. at 660 (O’Connor, dissenting, joined by Rehnquist, C.J., Scalia and Thomas, J.)), 
Old Chief 
has been followed by the overwhelming majority of courts and every state court of last resort to have considered the matter. See 
Brown v. State
, 719 So. 2d 882 (Fla. 1998); 
State v. Lee
, 266 Kan. 804, 977 P.2d 263 (1999); 
Carter v. State
, 374 Md. 693, 824 A.2d 123 (2003); 
State v. James
, 355 S.C. 25, 583 S.E.2d 745 (2003); 
State v. James
, 81 S.W.3d 751, 762 (Tenn. 2002) . The only courts that have declined to follow 
Old Chief
 distinguished its holding based on variations in the applicable state statutory law. See
 State v. Ball
, 756 So. 2d 275, 278 (La. 1999) (state statute required proof of a particular felony); 
State v. Jackson
, 139 N.C. App. 721, 535 S.E.2d 48 (2000) (state statute specifically allowed prior felony to be proven by record of conviction); 
State v. Jackson
, No. 02AP–468 (Ohio App., March 31, 2003) (to prove the offense of “possession of a weapon under disability,” the prosecutor had to prove prior drug conviction).

In 
Brown
, the Florida Supreme Court held:

“In light of 
Old Chief
, we *** conclude that, in view of the limited purpose for which evidence of prior convictions in felon-in-possession cases is offered, trial and appellate courts should be relieved of making discrete and subjective value judgments in dealing with what should be a routine submission of prior felony conviction evidence. While there is obviously some risk of prejudice inherent in establishing that a defendant is a convicted felon, our concern here is in dealing with the additional and unnecessary risk of prejudice that comes with disclosure of the number or nature of the prior convictions.

* * *

*** Offering into evidence anything beyond what is necessary to establish the defendant’s legal status as a convicted felon is irrelevant to the current proceeding, has ‘discounted probative value,’ and may needlessly risk a conviction on improper grounds.” 
Brown
, 719 So. 2d at 888-89.

The Kansas Supreme Court in 
Lee
 relied on 
Old Chief 
and the Florida decision in 
Brown, 
holding:

“In a firearm criminal possession case, what fact does the State seek to establish by offering into evidence a defendant’s prior record through a journal entry? The answer is the defendant’s status as a prior convicted felon. Lee agreed to stipulate to prior convicted felon status. We see no need to admit into evidence a journal entry reflecting the type and nature of a prior conviction in order to prove that Lee was a convicted felon.

* * *

Unless there is a dispute over the status of the prior conviction (for example, was it or was it not a felony), the admission of the type and nature of the prior crime can only prejudice the jury. See 
Brown
, 719 So. 2d at 886. Under the limited focus here, what countervailing interests support admission of the type and nature of the felony? There are none in a status case.

 * * *

We acknowledge that the State has the right and, in fact the duty, to establish the elements of the crime charged. The State also has an interest in presenting its case in its own way by telling the story as the State wishes. But, Lee should be judged only on the crimes charged and, as 
Brown 
observed, ‘not being convicted on an improper ground due to the admission of evidence that carries unfairly prejudicial baggage.’ ” 
Lee
, 266 Kan. at 813-15, 977 P.2d at 269-70.

More recently, the Maryland Supreme Court, upon considering whether a defendant charged with “possession of a regulated firearm by one previously convicted of a crime of violence” is unfairly prejudiced by the admission of the name and nature of the defendant’s prior convictions, 
held:

“We see no meaningful difference between 
Old Chief
,
 Brown
, 
Lee
, and the case before us. In all of those cases, the prosecution needed to prove only that the defendants were felons to satisfy the prior conviction element. Maryland courts, like their Federal, Florida, and Kansas counterparts, permit the exclusion of evidence if ‘its probative value is substantially outweighed by the danger of unfair prejudice.’ Maryland Rule 5–403. We agree with 
Old Chief 
that the name and nature of a previous conviction, although ‘technically relevant,’ ‘addresses no detail in the definition of the prior-conviction element that would not [be] covered by the stipulation or admission [of that element].’ Therefore, we, too, are of the opinion that, when requested by the defendant in a criminal-in-possession case under Maryland Code, Article 27, Section 445, the trial court must accept a stipulation or admission that the defendant was convicted of a crime that qualifies under the criminal-in-possession statute. We hold also that, in such situations, the name or nature of the previous conviction should not be disclosed to the jury.” 
Carter
, 374 Md. at 720-21, 824 A.2d at 139-40.

C. Application of 
Old Chief 
to Illinois law

At the outset, we recognize that 
Old Chief
 is not binding on this court because the Supreme Court was interpreting federal statutory law and this court is interpreting state law. Nevertheless, this court, like the Florida, Kansas, and Maryland courts before us, finds the reasoning in 
Old Chief 
persuasive.

Section 24–1.1(a) of the Criminal Code (720 ILCS 5/24–1.1(a) (West 2000)), defines the offense of possession of a weapon by a felon and provides:

“It is unlawful for a person to knowingly possess on or about his person or on his land or in his own abode or fixed place of business any weapon prohibited under Section 24–1 of this Act or any firearm or any firearm ammunition if the person has been convicted of a felony under the laws of this State or any other jurisdiction.”

Our statute, like the federal statute in 
Old Chief
, does not require proof of a specific felony conviction. Thus, to prove a violation of section 24–1.1, the prosecutor must establish only the defendant’s felon status. Under these circumstances, we agree with 
Old Chief
 that “the evidentiary significance of an admission” is no different from “the legitimately probative component of the official record the prosecution would prefer to place evidence.” See 
Old Chief
, 519 U.S. at 191, 136 L. Ed. 2d at 594, 117 S. Ct. at 655. Thus, when a defendant offers to stipulate to his felon status, the prosecution has available to it evidence which is equally probative of the prior-conviction element of the crime charged as the record of conviction would be.

The question then becomes whether the trial court may permit the State to refuse to accept a defendant’s stipulation in place of his record of conviction. In 
Old Chief
, the Court resolved this issue by turning to Federal Rule of Evidence 403. In Illinois, there is no rule of evidence identical to Federal Rule of Evidence 403. However, Illinois courts have long recognized, as a matter of common law, that a trial court may exercise its discretion to exclude evidence, even when it is relevant, if its prejudicial effect substantially outweighs its probative value. See 
People v. Lewis
, 165 Ill. 2d 305 (1995). Moreover, as noted in 
People v. Peete
, 318 Ill. App. 3d 961, 967 (2001), while our common law rule lacks the “unfair prejudice” language of the federal rule, this court has always provided for the exclusion of evidence due to its “ ‘possibly unfair prejudicial nature.’ ” 
People v. Enis
, 139 Ill. 2d 264, 281 (1990), quoting 
People v. Ward
, 101 Ill. 2d 443, 455 (1984). Thus, we agree with the Court in 
Old Chief
, that when deciding whether to exclude certain evidence, the proper consideration is whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice.

Performing this balancing test in the context of cases requiring proof of felon status, we conclude that the admission of a defendant’s record of conviction creates a risk that he will be unfairly prejudiced. Moreover, because the only purpose for admitting a defendant’s prior-conviction record is to establish felon status, the name and nature of the prior convictions is unnecessary surplusage without any evidentiary significance. Thus, a defendant’s record of conviction has “discounted” probative value. On the other hand, the defendant’s admission or stipulation is conclusive evidence of felon status which presents little or no risk of unfair prejudice. On balance, then, the probative value of the record of conviction is outweighed by the risk of unfair prejudice and the trial court should require the prosecution to meet its evidentiary obligation of proving felon status by using an admission or stipulation if one is offered by the defendant. We conclude, therefore, that when proving felon status is the only purpose for admitting evidence of a defendant’s prior convictions, and the defendant offers to stipulate or admit to his prior felon status, a trial court abuses its discretion when it admits the defendant’s record of conviction, thus informing the jury of the name and nature of the defendant’s prior convictions.

The State argues that by adopting the rule announced in 
Old Chief 
we deprive the prosecution of its duty, obligation, and entitlement to prove the existence of each element of a crime beyond a reasonable doubt. We do not agree. As we have already held, 
the evidentiary significance of the record of conviction is indistinguishable from that of the stipulation, except that one creates a substantial risk of prejudice and the other does not. Thus, once a stipulation is offered, the State has alternative evidence that is equally probative of the element which the State has an obligation to prove. Simply stated, the prosecution has no entitlement or right to present evidence that is unfairly prejudicial when equally probative, nonprejudicial evidence is available and will serve the same purpose.

We also disagree with the State’s assertion that our adoption of the reasoning in 
Old Chief
 is at odds with our decision in 
People v. Buss
, 187 Ill. 2d 144 (1999). In 
Buss
, the defendant was not charged with an offense which required proof of felon status, but rather, 
was charged with the murder and kidnapping of 10½-year-old Christopher Meyer. Defendant offered to stipulate to the time and cause of Christopher’s death to prevent the State from presenting “gruesome” testimony concerning the process of identifying Meyer’s body and determining the time and cause of death. In ruling that the trial court did not abuse its discretion by rejecting defendant’s offer to stipulate, we employed the same balancing test, weighing probative value against unfair prejudice. However, in that case, the evidence which defendant sought to exclude was “highly probative with respect to the identity of the body found in Hunting Area 7, the precise time of Christopher’s death, the manner and cause of his death, and the weapon used.” 
Buss
, 187 Ill. 2d at 220.

Buss 
is distinguishable from the case at bar. The evidentiary significance of the testimony which Buss sought to exclude was more extensive than his proffered stipulation. The Court in 
Old Chief 
acknowledged that a defendant’s offer to stipulate will not deprive the State of its opportunity to present evidence with “evidentiary depth.” 
Old Chief
, 519 U.S. at 190, 136 L. Ed. 2d at 593, 117 S. Ct. at 654. Thus, even when applying 
Old Chief
’s reasoning, the trial court in 
Buss 
would not have been required to accept the defendant’s offer to stipulate and our decision in 
Buss 
would be unaffected. For identical reasons, we find the State’s reliance on
 People v. Kubat
, 94 Ill. 2d 437 (1983), and 
People v. Speck
, 41 Ill. 2d 177 (1968), to be misplaced.

We also find no conflict between our decision here today and this court’s rejection of the “mere-fact” method of impeachment. See 
People v. Atkinson
, 186 Ill. 2d 450 (1999). In 
People v. Montgomery
, 47 Ill. 2d 510, 519 (1971), this court adopted Federal Rule of Evidence 609, to be used as a guide when deciding whether a defendant’s prior convictions should be admitted to impeach his credibility. See also M. Graham, Cleary & Graham’s Handbook of Illinois Evidence §§609.1, 609.2 (6th ed. 1994). As noted in 
Atkinson
, “[u]nder the 
Montgomery
 rule, evidence of a witness’ prior conviction is admissible to attack the witness’ credibility where: (1) the prior crime was punishable by death or imprisonment in excess of one year, or involved dishonesty or false statement regardless of the punishment, (2) less than 10 years has elapsed since the date of conviction of the prior crime or release of the witness from confinement, whichever is later, and (3) the probative value of admitting the prior conviction outweighs the danger of unfair prejudice.” 
Atkinson
, 186 Ill. 2d at 456. Accordingly, under 
Montgomery
, before the State may be allowed to impeach a defendant using his prior convictions, the trial judge is required to conduct the same balancing test, weighing the probative value of the evidence against its potential unfair prejudice. 
Atkinson
, 186 Ill. 2d at 456. In 
Atkinson
, it was proposed that a less prejudicial alternative might be considered when performing this balancing: it was proposed that a trial court, rather than exclude evidence of a defendant’s prior convictions because its prejudicial effect outweighed its probative value, could choose to inform the jury of the “mere fact” that the defendant had prior convictions, without revealing the name and nature of the convictions. In this way the defendant would be impeached, but the prejudicial effect would be mitigated. This court rejected this “mere-fact” method of impeachment, holding:

“Our case law interpreting 
Montgomery
 suggests that it is the nature of a past conviction, not merely the fact of it, that aids the jury in assessing a witness’ credibility. [Citations.] The mere-fact approach undermines the 
Montgomery 
rule and inhibits the jury’s evaluation of a witness’ credibility by eliminating the jury’s consideration of the nature of the past crime.” 
Atkinson
, 186 Ill. 2d at 458.

Admission of prior-conviction evidence to impeach a defendant’s credibility is a purpose beyond that of proving a defendant’s felon status. In 
Atkinson
, we recognized that the decision in 
Old Chief
 was not inconsistent with our decision to reject the mere-fact method of impeachment. We held:

“The circumstances involved in 
Old Chief 
indicate that the Court’s decision has no application to this case. 
Old Chief 
involved neither the admission of a prior conviction as impeachment evidence nor a general discussion of Federal Rule of Evidence 609.” 
Atkinson
, 186 Ill. 2d at 461.

Today we reaffirm that our decision in 
Atkinson 
to reject the mere-fact method of impeachment is not in conflict with the logic and reasoning in 
Old Chief.

In sum, our holding in the case at bar is a very narrow one. We determine, as did the Court in 
Old Chief, 
that where the prosecution’s sole purpose for introducing evidence of a defendant’s prior felony conviction is to prove his status as a convicted felon and the defendant offers to stipulate to this element, the probative value of the name and nature of the prior conviction is outweighed by the risk of unfair prejudice and, thus, should be excluded.

Finally, we decline the State’s invitation to find that, in the case at bar, the trial court’s error in admitting evidence of the name and nature of defendant’s prior conviction was harmless. Defendant’s prior felony conviction was for possession of a controlled substance with the intent to deliver. Although the current charges against defendant did not include charges for possession or sale of a controlled substance, the State’s theory of the case, which formed the backdrop to the charged offenses, was that defendant made a delivery of cocaine and, when he did not get paid, went back with a firearm to extract payment. As noted above, the State began its opening statement at defendant’s trial by saying, “This case is about a drug deal gone bad.” The fact that defendant had a prior drug conviction made the State’s story more plausible. Thus, by having the jury view defendant as a drug dealer, it was more likely to find defendant guilty of the crimes charged. The prosecution, aware of the impact that defendant’s prior conviction might have on the jury, repeatedly made reference to the name and nature of the prior conviction in closing argument.

We are also not convinced that the evidence in this case was overwhelming. We recognize that the length of time a jury deliberates is not always an accurate indicator of whether the evidence was closely balanced. See 
People v. Boshears
, 228 Ill. App. 3d 677 (1992); 
People v. Edwards
, 77 Ill. App. 3d 237 (1979). Our concern here, however, is not only with the length of time the jury expended in deliberations, but with the notes and questions sent by the jury to the court. The questions suggest that the jury did not find the testimony of the Watson sisters entirely credible and, for that reason, the evidence against the defendant was not as overwhelming as the prosecution argues. Under the circumstances, it is possible that the prior-conviction evidence tipped the scales against the defendant.

For the reasons stated, we find a reasonable probability that defendant was denied a fair trial by the admission of the evidence of the name and nature of his prior conviction. We conclude that revealing the name and nature of defendant’s prior conviction to the jury was prejudicial to defendant and cannot be viewed as harmless error. Accordingly, remand for a new trial is required.

C. Prior Consistent Statement

When defendant appealed his convictions to the appellate court, he raised an additional claim of error concerning the improper admission of Crystal Watson’s prior consistent statement. Defendant did not dispute that Crystal’s second written statement to the police, which was consistent with her trial testimony, was admissible to rebut the suggestion that the State’s grant of immunity had motivated her to testify falsely. 335 Ill. App. 3d at 113-14. He argued, however, that the trial court had erred by admitting Crystal Watson’s second written statement as substantive evidence.

The State, in response, denied that Crystal’s second written statement was admitted substantively. In addition, the State argued that defendant failed to preserve the issue for review by his failure to lodge appropriate objections and by his failure to request or submit a limiting instruction.

The appellate court, having already decided that reversal was required due to the admission of the name and nature of defendant’s prior conviction, chose to address this issue, finding it to be a matter likely to recur on remand. See 
People v. Fuller
, 205 Ill. 2d 308 (2002) (on review, once it is decided that a new trial is required, additional claims of error may be addressed if they are likely to arise again in the course of retrial). The appellate court found that, although the trial court did not expressly rule that Crystal’s statement could be used substantively, the fact that the State argued in closing argument that the statement “tells the truth,” and the fact that the statement was sent back to the jury without any limiting instructions, suggested that the substantive use of the statement had been permitted. Under these circumstances, the jurors could have concluded that they were able to consider the statement “ ‘as substantive evidence of the matters stated therein.’ ” 335 Ill. App. 3d at 114, quoting 
People v. Carr
, 53 Ill. App. 3d 492, 499-500 (1977). The court concluded that error had occurred because, in Illinois, prior consistent statements may be admitted to rebut a charge or inference that the witness is motivated to testify falsely or to rebut the inference that the witness’ testimony is of recent fabrication, but may not be admitted substantively to corroborate the witness’ testimony. 
People v. Williams
, 147 Ill. 2d 173 (1991); 
People v. Lambert
, 288 Ill. App. 3d 450, 453 (1997).

The appellate court acknowledged that defendant had not properly preserved this claim of error because he had not objected to the substantive use of the statement, nor had he requested a limiting instruction. 335 Ill. App. 3d at 114. Consequently, the appellate court did not consider whether this error, standing alone, would support reversal. The court merely took note of the error “to assist the trial court on remand.” 335 Ill. App. 3d at 114.

In its appeal to this court, the State challenges the appellate court’s holding on this matter. The State does not take exception to the appellate court’s statement of the law and concedes that prior consistent statements are generally inadmissible, but may be admitted 
for the limited purpose 
of rebutting inferences that the witness is motivated to testify falsely or that the testimony is of recent fabrication. 
People v. Emerson
, 97 Ill. 2d 487, 500-01 (1983). Rather, the State disputes the appellate court’s finding that, in the case at bar, Crystal’s prior consistent statement was admitted substantively, arguing that the record shows that the evidence was admitted under the exception, that is, for the limited purpose of rebutting the inference that Crystal was motivated to lie. The State also argues that the appellate court should not have addressed the error because defendant waived it. The State also makes a harmless error argument.

We find the State’s arguments unavailing. We agree with the appellate court that the record suggests that Crystal’s prior consistent statement was admitted substantively. The prosecutor’s arguments at trial reveal confusion over the extent to which a prior consistent statement may be admitted. When arguing for admission of Crystal’s written statement into evidence, the prosecutor asked that it be admitted “
as substantive evidence 
under the hearsay rule.” (Emphasis added.) Later, when seeking the admission of the State’s exhibits, the prosecutor, with regard to Crystal’s second written statement, argued: “[I]n that context, to counter that inference, [you can] admit as 
substantive evidence
 a prior consistent statement, and I think that that’s exactly what we’re trying to do and its proper for that reason.” (Emphasis added.) Later, in closing argument, the prosecutor used Crystal’s prior consistent statement substantively, arguing that it “tells the truth.” Also, when arguing in favor of sending the statement back to the jury, the prosecutor argued: “Both are admissible 
as substantive evidence
. And with respect to the hearsay exception for rebutting the inference of fabrication, I think they’re [the jury] entitled to consider it, especially in light of their request to see them.” (Emphasis added.)

We agree with the appellate court that, in light of the prosecutor’s argument and the fact that the jury was never instructed that the evidence should be considered for a limited purpose, the substantive use of the evidence was permitted. We recognize also that defendant’s failure to raise appropriate objections or to submit limiting instructions might present procedural barriers to a reversal of defendant’s convictions based on the improperly admitted statement However, because we affirm the appellate court’s reversal of defendant’s convictions on other grounds and the cause is being remanded for a new trial, we need not decide whether this error constitutes an independent basis for reversing defendant’s convictions, nor is it necessary to engage in a harmless error review.

Similarly, we also decline to address defendant’s issue, raised in his cross-appeal, that the jury was improperly instructed in response to a question which arose during deliberations.

CONCLUSION

The judgment of the appellate court, remanding the cause to the circuit court for further proceedings, is affirmed.

Appellate court judgment affirmed.